PEOPLE *v.* SCADUTO.

1. CRIMINAL LAW—CONSPIRACY—EVIDENCE—TRIAL WITHOUT JURY.

In prosecution for conspiracy to obstruct justice, evidence showed beyond a reasonable doubt that defendant, tried without a jury, was intimately associated with payments made certain other defendants, some of whom were public officers, for illegal purpose of protecting operation of a blind pig and a bawdy house.

2. SAME—CONSPIRACY TO CONSTRUCT JUSTICE—CREDIBILITY OF WITNESSES.

Credibility of appellant, claimed to have paid money to certain public officials for illegal purpose of protecting operation of a blind pig and a bawdy house and of another defendant who gave testimony connecting appellant with conspiracy to obstruct justice was for the judge trying case without a jury where their testimony was conflicting but the testimony of each was weakened in various ways.

3. SAME—CONSPIRACY—SIMULTANEOUS TRIAL BY AND WITHOUT JURY.

In prosecution for conspiracy to obstruct justice wherein jury trial of 24 other defendants was conducted simultaneously with trial of appellant without a jury, trial judge did not commit reversible error in failing to have made his findings as to appellant immediately after jury began its deliberations or in not promptly finding appellant not guilty on his two motions made at close of the people's case and again at the close of the testimony, since a sealed verdict is not required under such circumstances and to have granted the motions would have prejudiced the jury or the case of the other defendants.

4. SAME—QUESTIONS REVIEWABLE—VENUE.

Claim that venue of the commission of crime was not established by competent evidence, not having been raised at the trial,

comes too late where first made on appeal (3 Comp. Laws 1929, § 17259).

Appeal from Wayne; Pugsley (Earl C.), J., presiding. Submitted June 11, 1942. (Docket No. 59, Calendar No. 41,751.) Decided November 24, 1942.

Angelo Scaduto was convicted of conspiracy to obstruct justice. Affirmed.

*M. D. Smilay,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Thomas A. Kenney,* Assistant Attorney General, and *Chester P. O'Hara,* Special Prosecuting Attorney, for the people.

Butzel, J. Angelo Scaduto, one of the defendants in the case of People v. McCrea, waived a jury trial and elected to be tried by the court. He was tried concurrently with the other defendants, the court announcing its determination of guilt as to Scaduto after the rendition of the verdict by the jury as to his codefendants. We limit our opinion to questions raised by Scaduto and not discussed in the opinions this day rendered in the appeals of his codefendants.*

Scaduto's chief claim is that the evidence did not justify his conviction, that he was charged with corruption in paying protection money to officials so as not to interfere in his running a bawdy house, that the evidence did not indicate that he was interested

---

* *People* v. *McCrea, ante,* 213; *People* v. *Wilcox, ante,* 287; *People* v. *Malone, ante,* 297; *People* v. *Staebler, ante,* 298; *People* v. *Stambaugh, ante,* 300; *People* v. *Way, ante,* 303; *People* v. *Garska, post,* 313.—Reporter.

in a bawdy house. He further claims he never paid any moneys for running an illegal business. Evidence was introduced to show that he paid money for the illegal purpose of running a blind pig and also a bawdy house. While the testimony is stronger in regard to the blind pig, it being shown that Scaduto was interested in one on the Ann Arbor Trail, Wayne county, Michigan, there is still a sufficient showing in regard to his paying money for a bawdy house. According to witness Pines, who collected corruption money for the various officials, Scaduto was interested in the bawdy house referred to as the "Stone House" on Joy Road. Moneys were paid several times by Scaduto in person, but more frequently were paid for him by James DeFalco, a codefendant, who was convicted by the jury and who has not appealed. DeFalco, a friend of Scaduto's, was out of work when employed at the "Stone House." He subsequently made many payments to Pines. Upon one occasion DeFalco and Scaduto together went to Pines' office in order to make payments.

It is claimed that the "Stone House" was run by the wife of appellant, referred to as "Diamond Lil." Once when she was placed under arrest by a patrolman, there was a report of a statement claimed to have been made by her that she was immune from arrest because of the payment of protection moneys. It was shown that thereupon Scaduto went to the office of codefendant Staebler in the sheriff's office to deny that Mrs. Scaduto had made such statement. Pines was thereupon told by Staebler to get Scaduto out of his office. We quote part of Pines' testimony:

"Angelo Scaduto had a blind pig on Ann Arbor Trail. He used to pay $50 a month or $75 for that blind pig. Sometime in the latter part of 1937 Angelo came up to Staebler's office. I happened to

walk in there and I seen Angelo in there. And Carl says to me, 'Gus, get him out of here.' I took Mr. Angelo by the arm and I walked him out. I says to him, 'Angelo, what are you doing up here?' He says, 'Well, they took my wife down, and somebody said that my wife, in the car, with the county detectives, she happened to crack she is paying off the sheriff, and I want to come up here and deny that.' Well, from that time on Carl told me not to do any business with Angelo no more. When they opened the Joy Road place, a fellow come into the office I happened to know for about 20 years, Mr. DeFalco. DeFalco was married, didn't have no job, and he says, 'Gus,' he says, 'if I can get Angelo to open up,' he says, 'I can make myself $25 a week.' So I told Jimmy he can open up. He was on the welfare then, and didn't have nothing, and Gus wanted to give him a break.    *    *    *

"Scaduto brought the money in to me from the Ann Arbor Trail in person, he gave it to me in the office. James DeFalco brought the money in to me from the Joy Road place. Scaduto was paying me for a blind pig. The place on Joy Road was a house of prostitution. I never talked to Angelo Scaduto about that place, I talked about it with James DeFalco. Exhibit 404 shows Joy Road paying $200 for March of 1938. Joy Road paid $100 for the month before and $100 for opening up, something like that. Jimmy DeFalco told me at that time that they will have a bar downstairs and maybe a girl or two in the place. He told me that Angelo Scaduto operate it. Jimmy DeFalco brought the money to me at the office.    *    *    *

"Scaduto came up with Jimmy DeFalco when Jimmy came up to pay for the Stone House.

"The reception room of my office—from my office I couldn't look out into the reception room. Mr. DeFalco who was acting for Angelo Scaduto as a stooge to get $25 a week to make a living, came up after Angelo came up to Staebler's office, and I walked him out of there, and after that I didn't

want to do no business with Angelo, so he used Jimmy DeFalco and gave him $25 a week just to do business with me, but I couldn't see Angelo out in the reception room, but when I come out there I heard Angelo was there, and the next time DeFalco seen me, he told me Angelo was there.

"DeFalco was bringing in money after Angelo came up to Staebler's office, and I walked him out. That is the time he said somebody said his wife, she took a ride with one of the road patrolmen, and she said we are paying off to the sheriff's office, and I don't see why you should pinch us, or something like that, and Angelo came in the next day, and he wanted to rectify that. He went right up to Staebler's office instead of coming to see me."

Scaduto testified that he had worked in automobile plants, had been a bootlegger on the side and had been convicted as such, and that he had also been in the gambling "business." He testified that he did not know the business his wife was in, but he made no claim that he was not living with her. When confronted with his admission theretofore given before the grand jury, in which he stated that there were a couple of prostitutes at his place of business, he answered that he did not recall the testimony. He did not, however, deny that he gave such testimony. The very strong circumstantial evidence, in addition to some direct testimony, shows that Scaduto in person and by DeFalco, as agent, paid moneys for corrupting officials. While Pines' further testimony weakens in some minor details the part we have quoted and there also is a possibility that the moneys paid to run a bawdy house came from Scaduto's wife, it is shown beyond a reasonable doubt, after giving Scaduto the benefit of all presumptions, that he was so intimately tied up with the payments as to be chargeable with guilty knowledge and participation.

Appellant attacks Pines' credibility. It was

shown that Scaduto had been convicted of soliciting for another bawdy house and that at the time of his arrest near a high school he had 5,000 cards in his car. We are not impressed with that of Scaduto. Credibility under the circumstances was a matter for "the jury or judge sitting as a jury." *People v. Beath,* 227 Mich. 473.

Further claim is made that the judge should have rendered a sealed verdict, or at least made his finding immediately after the jury began its deliberations; and that he should have decided promptly the appellant's two motions for directed verdict, one made at the end of the people's case and the other at the conclusion of the testimony. Our attention is not directed to any rule of law requiring a sealed verdict under the circumstances of this case. The trial judge obviously did not care to prejudice the jury or the case of the other defendants by directing a verdict against defendant before the jury had retired to deliberate on the guilt or innocence of the other 24 defendants. His failure to decide defendant's motion immediately after the jury was charged was due largely to the untoward incident that arose when the jury retired and the necessity of taking testimony and by prompt action avoid mistrial. We find no error.

Appellant further claims that the venue of the commission of the crime was not established by competent evidence. Even if there were merit in his claim, it was not raised at the trial. It is now too late. *People v. Sims,* 257 Mich. 478; 3 Comp. Laws 1929, § 17259 (Stat. Ann. § 28.985).

Judgment of conviction is affirmed.

CHANDLER, C. J., and NORTH, STARR, BUSHNELL, and SHARPE, JJ., concurred. BOYLES and WIEST, JJ., did not sit.